**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TRUDYE L. BONAR,**

    **Plaintiff,**

                                          **Civil Action 2:20-cv-4399**

    **v.**                                 **Judge Michael H. Watson**

                                          **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Trudye L. Bonar, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Memorandum in Opposition (ECF No. 15), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

## I.      BACKGROUND

Plaintiff protectively filed her application for disability insurance benefits on August 17, 2016, alleging that she had become disabled on December 31, 2014. (R. 167–73.) Plaintiff's application was denied initially in January 2017, and again upon reconsideration in April 2017. (R. 78–110, 454–67.) On September 5, 2019, Administrative Law Judge Jeffrey Hartranft (the

"ALJ") held a hearing,[1] and on September 18, he issued an unfavorable determination.  (R. 65–77, 11–20.)  On June 24, 2020, the Appeals Council declined to review that determination such that it became final.  (R. 1–5.)  Plaintiff seeks judicial review of the ALJ's unfavorable determination.  In her sole contention of error, Plaintiff argues the ALJ erred in classifying her mental health impairments as not severe.  (Pl.'s Statement of Errors at 6-11, ECF No. 14.)

## II.      THE ALJ'S DECISION

The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 11–20.)  First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019.  (R. 13.)  At step one of the sequential

---

[1] An initial hearing was held on June 19, 2019, and it was continued to allow Plaintiff additional time to obtain recent wage documentation and additional medical records.  (R. 11, 28–29.)  At both hearings, Plaintiff appeared and testified without counsel.  (*Id.* at 147)

evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2014, the alleged onset date of her disability. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: branch retinal artery occlusion; Factor V Leiden deficiency; and post-thrombotic syndrome. (*Id.*) Also at this step, the ALJ determined that although Plaintiff had a medically determinable mental impairment of major depressive disorder, this impairment was non-severe. (R. 14.) In so finding, the ALJ conducted the required four-part analysis set out in 20 C.F.R. § 404.1520a(c)(3)–(4), and concluded that Plaintiff's depression did not cause more than a minimal limitation in her ability to perform basic mental work activities. (R. 14.) Having evaluated Plaintiff's mental impairments for severity,

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

the ALJ made a finding that mental limitations were not supported and that he would not ultimately include them in Plaintiff's residual functional capacity ("RFC").[3] (R. 15.)

At step three of the sequential analysis, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ then set forth Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except occasional climbing ramps and stairs; never climbing ladders, ropes or scaffolds; occasional stooping, kneeling, crouching and crawling; no exposure to workplace hazards such as unprotected heights and moving machinery and no commercial driving.

(R. 16.) The ALJ found that Plaintiff was unable to perform her past relevant work as a laborer or as an administrative assistant. (R. 18.) At step five of the sequential analysis, the ALJ relied on testimony from a Vocational Expert to determine that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (R. 19–20.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. 20.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

---

[3] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 4040.1545(a)(1).

substantial evidence, shall be conclusive . . . ").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.   The Court must  "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that  finding 'even if there is substantial evidence in the record that would have supported an opposite  conclusion.'"   *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109  F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.    ANALYSIS

As set forth above, Plaintiff challenges the ALJ's step-two determination that Plaintiff's major depressive disorder is non-severe.  Within this contention of error, Plaintiff posits that because "the threshold for what constitutes a severe impairment [is] an extremely low threshold," the ALJ should have relied upon the existence of two medical source opinions to conclude that Plaintiff's depression was a severe impairment.  (Pl.'s Statement of Errors 8-10, ECF No. 14.) Plaintiff then concludes that this error is not harmless because the ALJ failed to consider whether Plaintiff's mental health impairments impacted her ability to sustain work.  The undersigned

5

finds no error in the ALJ's consideration of Plaintiff's mental impairments and further concludes that substantial evidence supports the ALJ's determination that Plaintiff's depressive disorder is non-severe.

At step two of the sequential evaluation process, it is Plaintiff's burden to demonstrate she has a severe impairment. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803–04 (6th Cir. 2012). A severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and which lasts or can be expected to last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "A severe mental impairment," like that at issue here, must be "established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." *Griffith v. Comm'r*, 582 F. App'x 555, 559 (6th Cir. 2014) (quoting 20 C.F.R. § 416.908). "When there is evidence of a mental impairment documented by 'medically acceptable clinical and laboratory diagnostic techniques,' 20 C.F.R. § 404.1508, the regulations require the ALJ to follow a 'special technique' to assess the severity of the impairment, 20 C.F.R. § 404.1520a." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013). Using this technique, the ALJ rates the degree of a claimant's functional limitation in four broad areas: "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3). For the first three areas, the ALJ rates the claimant on a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the degree of the claimant's limitation in the first three functional areas is rated as 'none' or 'mild' and 'none' in the fourth area," the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the

6

evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id*. § 404.1520a(d)(1).

Here, the ALJ performed the appropriate analysis under the regulations. The ALJ considered the entire record related to Plaintiff's assertion of a mental disability, including Plaintiff's testimony, physicians' opinions, and medical records, and found, in the four categories, respectively: (1) mild limitation, (2) no limitation, (3) mild limitation, and (4) no limitation. The ALJ therefore concluded that Plaintiff's depressive disorder was non-severe. (R. 14.)

The ALJ reasonably concluded that Plaintiff's mental health impairment and does not cause more than minimal limitation in her ability to perform mental work activities and was non-severe. The ALJ discussed and relied upon substantial evidence in support of this determination, considering and discussing, for example, the following evidence:

- **The report of Plaintiff's primary care doctor, Dr. William Shade**. (R. 440–41). Dr. Shade reported that Plaintiff did not have a history of mental impairments, or any functional limitations related to a mental impairment. Finding this consistent with the record, the ALJ accorded it some weight. (R. 15).

- **Dr. Shade's medical records**. (R. 448, 485.) Primary care provider records indicated that Plaintiff repeatedly declined to undertake mental health treatment. For example, Plaintiff declined antidepressant medication and sleep medication, and considered but did not attend counseling, related to a traumatic life event in 2017. Similarly, Plaintiff declined antidepressant medication and a psychological evaluation again after the deaths of loved ones in 2018.

- **The opinion of non-examining medical expert Dr. Joan Joynson**. (R. 456, 466). Dr. Joynson opined that Plaintiff did not have any severe mental impairments. Additionally, Dr. Joynson determined that Plaintiff had no limitations in understanding, remembering, or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; or in adapting or managing herself. (R. 464.) Finding this consistent with the record, the ALJ gave it some weight. (R. 15).

- **The opinion of non-examining medical expert Dr. Mark Berkowitz**. (R. 454). Dr. Berkowitz reviewed non-treating examiner Dr. Gregory Scott Johnson's opinion that Plaintiff had mental health limitations. Dr. Berkowitz opined, "[w]hile it is

7

acknowledged that in this one-time exam, claimant appeared depressed, to conclude she is suffering from a separate psychiatric impairment is premature. She confirms she has never had any psychiatric care. Mood and/or anxiety fluctuations are normal secondary to physical impairments and/or adverse life circumstances and medication effects and pain can sometimes cause perceived cognitive variability. There is no evidence of a psych mdi in file or evidence indicating that further psychiatric development is warranted." (R. 100–01.) Finding this consistent with the record, the ALJ gave it some weight. (R. 15).

- **The fact that Plaintiff was not in treatment for, and had no treatment history for, any mental health disease**. (R. 14).

- **Plaintiff's activities of daily living**. (*See* R. 14, 447.) Plaintiff reported that she was "carrying out regular activities of daily living including engaging in chores, working her home business, running errands, preparing meals and engaging in hobbies such as flower arrangement and attending Eagles Club weekly."

The ALJ reasonably relied upon the foregoing evidence to support his step-two determination. *Cf. Marotta v. Comm'r of Soc. Sec.,* No. 1:16-cv-1169, 2017 WL 3065273, at *7 (N.D. Ohio July 19, 2017) (ALJ did not err in considering lack of treatment among factors in weighing evidence); *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 441–42 (6th Cir. 2017) (ALJ properly considered Plaintiff's mental ability to perform other life activities when assessing impairment's impact on ability to work).

Plaintiff's assertion that the existence of two contradictory opinions mandated a different step-two result is unavailing. Significantly, Plaintiff does not directly challenge the ALJ's weighing of these opinions, but instead characterizes the ALJ's rejection of these opinions as "troubling," "conclusory," and unfairly relying only on Plaintiff's lack of mental health treatment. (Pl.'s Statement of Errors 8-10, ECF No. 14.) The ALJ considered the opinions upon which Plaintiff relies, but accorded them "little weight." (R. at 14-15.) Contrary to Plaintiff's assertions, the ALJ didn't rely solely on Plaintiff's lack of mental health treatment to reject the at-issue opinions, but instead relied upon the record evidence as a whole (as detailed above) to conclude that the opinions of Plaintiff's treating physician and Drs. Joynson and Berkowitz were

more consistent with the record evidence. (*See* R. 15 (concluding that Dr. Johnson's opinion was entitled to "little weight" because it was "based on a one-time examination of the claimant and [] not consistent with the overall evidence of record, which indicates the claimant has not required mental health treatment and is capable of carrying out activities without interference of mental health symptoms") and R. 14-15 (concluding Dr. Kravitz' opinion entitled to "little weight" explaining that the one-time review of Plaintiff's records was not consistent with the record evidence as a whole).)

Regardless, Plaintiff's assertions that reversal is required because had the ALJ "properly classified [Plaintiff's alleged depression] as severe, then it would be expected that the [RFC] would contain mental health limitations," and because "[t]he ALJ's decision at step two made it so the residual functional capacity did not have to contain any mental health limitations" are incorrect. (*See* Pl.'s Statement of Errors 10, ECF No. 14.) Indeed, an ALJ could determine an impairment is severe, but also assess an RFC that does not contain any limitations related to that severe impairment. *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (quoting *Yang v. Comm'r of Soc. Sec.*, No. 00–10446–BC, 2004 WL 1765480, at *5 (E.D. Mich. July 14, 2004)). Here, Plaintiff does not challenge the ALJ's determination with respect to her functional limitation in the four broad areas, and the ALJ explicitly considered but rejected Dr. Kravitz's opinion that Plaintiff's depression caused limitation in work-related functions. (*See* R. 14 (rejecting Dr. Kravitz's opinion that Plaintiff "required mental limitations with respect to work-related functions," citing record evidence, including Plaintiff's "reported activities, lack of mental health treatment and overall presentation") and R. at 15 (concluding that "the paragraph B mental function analysis

does not support any mental functional limitations in this case . . . [such that] there are not mental limitations included in the [RFC] assessed below").) Because the ALJ's decision makes clear that he found no work-related limitations flowing from Plaintiff's alleged mental health impairments and supplies his reasoning in support of that determination, the ALJ was not required to repeat his analysis later in his decision in connection with his discussion relating to his RFC formulation. *See Smith v. Comm'r of Soc. Sec.*, No. 2:20-1511, 2021 WL 972444, at *9 (S.D. Ohio Mar. 16, 2021), *R&R adopted*, 2021 WL 1516173 (S.D. Ohio Apr. 16, 2021) ("[I]t would be a needless formality to have the ALJ repeat substantially similar factual analyses in different parts of the decision.") (quoting *Mausser v. Saul*, No. 3:19-CV-2055 JGC, 2020 WL 7043127, at *1 (N.D. Ohio Nov. 30, 2020)).

In summary, the undersigned finds the ALJ's step-two determination to be amply supported by substantial evidence and further finds that the ALJ did not err in his weighing and consideration of the record evidence and opinions in connection with his step-two finding.

## VI. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo*

determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made in this Report and Recommendation, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, *474* U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE